THE VILLAGE OF BARRINGTON HILLS, Plaintiff-Appellee, v. LIFE CHANGERS INTERNATIONAL CHURCH, f/k/a Midwest Christian Center, Defendant-Appellant.

First District (6th Division)    No. 1—03—0140

Opinion filed December 3, 2004.

Schiff, Hardin & Waite (Donald J. Kreger and Ruth E. Krugly, of counsel), and Massucci, Blomquist, Brown & Sherwell (Ernest R. Blomquist III, of counsel), both of Chicago, for appellant.

Burke, Warren, MacKay & Serritella, P.C., of Chicago (George J. Lynch, Mark H. Horwich, and Bradley I. Schecter, of counsel), for appellee.

JUSTICE O'MARA FROSSARD delivered the opinion of the court:
Defendant, Life Changers International Church (Church), was found in violation of two provisions of the Village of Barrington Hills Municipal Code (the Code). Based on those violations, the trial court fined the Church $100,000. The trial court denied the Church's motion to reconsider and this appeal followed. The only issue presented by the instant appeal is whether the imposition of a $100,000 fine was an abuse of discretion by the trial court.

## BACKGROUND

On September 16, 1999, the engineer and the zoning enforcement officer for the Village of Barrington Hills (Village) observed large amounts of earth, gravel, and asphalt on the Church property at 180 North Hawthorne Road, Barrington Hills. Additionally, the property reflected excavations from several areas as well as substantial areas of plant cover that had been disturbed or removed. The Village informed the Church by letters beginning on September 20, 1999, that it was not in compliance with section 4—3—4 of the Code. Section 4—3—4(A)(1) of the Code provides that a site development permit is required before "land is cleared, graded, transported or otherwise disturbed," and "excavation, fill, or any combination thereof will exceed 300 (300) cubic yards" or plant cover is to be removed from an area exceeding either 20,000 square feet or 10 acres depending upon whether the parcel of land is vacant. Village of Barrington Hills Municipal Code § 4—3—4(A)(1) (eff. 1982). The original September 20, 1999, letter sent by the Village to the Church regarding these issues notified the Church that failure to comply with the Code could result in a fine up to $500 per day.

Numerous written communications occurred between counsel for the Village and the Church. The November 11, 1999, letter from the Village to the Church states "this letter will set forth the current status regarding the various violations by the church," and asserts "[n]o building permit application has ever been made to the Village regarding the excavation, fill, and removal of plant cover by the church." The Church's November 19, 1999, letter responding to the Village's letter states the Church's belief that it had, to the best of its knowledge, complied with all of the provisions of the Code and the requirements of the building permit issued for the construction of the Church.

On March 22, 2000, the Village filed its complaint alleging the Church violated section 4—3—4 by placing in excess of 300 cubic yards of fill on the property, by improperly clearing and disturbing substantial areas of plant cover, and by improperly excavating several

areas without applying for and obtaining a site development permit. The Village attached an exhibit to the complaint consisting of photos of the west, east, and north sides of the Church. The complaint alleges that the photos reflect the earth fill, plant cover removal, and excavation as of September 16, 1999.

The Church filed a motion for summary judgment on June 21, 2000. In its motion, the Church argued that the notices of violation and related letters demonstrated it received no notice of, and the Village never intended to prosecute, any alleged violations other than those related to the location and placement of soil on the Church's property. The Church further argued that if the Village intended to prosecute other activities as Code violations, it should have complied with due process by giving the Church sufficient notice of such additional alleged violations. The motion noted that the Village was seeking fines "in an amount up to $500 per day from September 20, 1999 and continuing through the date of judgment." The trial court denied the Church's motion for summary judgment.

On May 10, 2001, the trial court entered an order finding the Church in violation of section 4—3—4 of the Code regarding site development and in violation of section 6—4—4 of the Code regarding storm water management. The order states in relevant part:

"1. Defendant is currently in violation of Sections 4—3—4 and 6—4—4 of the [Code]. Such violations have existed since September 16, 1999 and continue to exist to this day.

2. Based on the aforesaid violations, Defendant is hereby ordered to file with this Court and submit to the [Village] on or before June 11, 2001 engineering calculations and plans prepared by a registered professional civil engineer in the state of Illinois. Said calculations and plans must adhere to the storm water management standards as set forth in Section 6—4—4 of the [Code]. Any detention basins designed and constructed pursuant to the aforesaid engineering calculations and plans shall provide one foot of free-board above the design high-water level. Detention basins adjacent to the state right-of-way shall have a minimum of two-feet free-board.

Defendant shall also file with this Court and submit to the [Village] on or before June 11, 2001 a site development plan and building permit application pursuant to the requirements of Section 4—3—4 of the [Code].

3. Once Defendant's engineering calculations, plans and site development plan are reviewed and approved and the building permit issued, Defendant shall commence work within fourteen (14) days of the approval and issuance.

4. All work shall be completed within twenty-eight (28) days after being commenced.

5. Within twenty-one (21) days after completion of the work Defendant shall file with this Court and submit to the [Village] 'As Constructed' drawings of the storm water management facilities prepared by a registered professional civil engineer or registered professional land surveyor in the state of Illinois and calculations, prepared by a registered professional civil engineer in Illinois based on the 'As Constructed' drawings demonstrating that the storm water management facilities have been constructed in accordance with the approved plans. Said engineer shall also provide a certification to this effect.

6. Finally, this matter is set for 9/21/01 at 9:00 a.m. for the Court's consideration and imposition of fines pursuant to Section 4—3—10 of the [Code] based on the aforesaid violations."

The trial court entered an agreed order on September 21, 2001, which reflected the Church had not yet completed and filed all required building permit applications and had not issued payment to the Village for the fees as required by the May 10, 2001, order. The court did, however, find that the Church had "complied with appropriate *** plans and specifications for the improvements/corrections required by the Village" and stated that "upon approval by the Village authorities *** Defendant shall without undue delay cause the required [C]ode compliance work to be undertaken." The case was continued by agreed order to November 30, 2001, to review the status of the Church's compliance and to entertain the Village's motion for fines.

The record includes a "Civil Engineer's Field Report" prepared by the Village's civil engineer which is dated November 28, 2001, two days before the November 30, 2001, status hearing. The "Observations" section of that report notes as follows:

"1. Both ponds have been graded and the pond bottoms and embankments have been spread with topsoil with the exception of the area around the overflow weirs.

2. Overflow weirs have been poured; however, the forms have not yet been pulled.

3. Outlet culverts and riprap at flared end sections have been installed. No evidence of the pre-existing culverts, proposed to be removed, was found.

4. Grading of the swale paralleling the west property line has begun; however, it was noted that it is not draining into the detention basin as per plan. This must be corrected."

The "Comments" section of the report states as follows:

"In accordance with the approved engineering plans the following must be completed:

* * *

3. Final restoration. (Given the time of year, it will not be pos-

sible to establish vegetation until the spring. The owner should provide temporary measures such as erosion control blanket to ensure the grading is not disturbed through the winter and to protect downstream properties from eroding soils. The owner should monitor the improvements throughout the winter and make repairs as necessary.)"

At the November 30, 2001, status hearing, the trial court entered an agreed order continuing the matter until April 26, 2002, "for Defendant's report as to the status of the correction of violations and a pre-trial conference regarding the issue of the imposition of fines."

On April 26, 2002, the trial court entered an order continuing the matter to June 18, 2002, "for final compliance and for setting of hearing regarding the issue of the imposition of fines." On June 18, 2002, the clerk of the circuit court entered progress reports presented by the parties regarding the detention basin improvements. The report prepared by the Village's civil engineer is dated June 14, 2002, and states in relevant part:

"Punchlist

1. Regrade eroded areas of swale at north end of site from detention pond to paved area, providing positive drainage from parking lot to pond.

2. Regrade eroded areas of northwest bank of south detention pond.

3. Clean debris from south detention pond.

4. Upon substantial catchment of vegetation, remove and dispose erosion control devices.

5. Please provide as-built drawings for our review."

The report prepared by the Church's engineer, a letter addressed to the Village dated June 17, 2002, states in relevant part:

"We have completed the field work for the As-Built drawings on the detention ponds for the Life Changers Church. We completed this field work on June 12, 2002.

Preliminary review of the spot grades *** taken indicate the pond has been graded to the proper elevations shown on the Final Engineering Plans.

I will finish the As-Built drawings by *** June 19 and have them delivered to your office."

On June 18, 2002, the trial court entered an order continuing the case to July 10, 2002, for the Church to complete compliance with the May 10, 2001, order and to set a hearing regarding fines. The case was again continued on July 10, 2002, to August 12, 2002, for a hearing on the imposition of fines. The July 10, 2002, order was the first order that did not reference any unresolved compliance issues. On August 12, 2002, an agreed order was entered continuing the case to August

22, 2002, for a conference regarding the Village's request for fees and costs.

On August 22, 2002, the trial court fined the Church $100,000 based on the previous finding of violations. The Church filed a motion to reconsider the imposition of fines, and the Village in turn filed a response to that motion. In its response, the Village noted:

"[I]t was not until July 9, 2002 that this Court entered an order indicating that the Defendant was finally in compliance. The Defendant was found by this Court to be in violation of the [Village] codes for a total of one thousand and twenty six (1026) days. The [Village] codes provide for fines of up to $500.00 a day for each and every day that a violation exists. Therefore, this Court could have imposed fines in this matter of up to $513,000.00. This Court's order imposing a fine of $100,000.00, based on $100.00 per day for one thousand (1000) days of violation was based on the record."

The trial court denied the Church's motion to reconsider and this appeal followed.

## ANALYSIS

■ We apply the abuse of discretion standard when reviewing whether the trial court properly imposed the subject fine. See *Village of Glenview v. Ramaker*, 282 Ill. App. 3d 368, 372 (1996). Imposition of a fine constitutes an abuse of discretion "[w]here cooperation is shown, compliance has come about, and imposition of a fine would not aid enforcement." *Village of Glenview*, 282 Ill. App. 3d at 372.

■ A review of the record in the instant case reflects that following the trial court's May 10, 2001, agreed order finding defendant in violation of Code provisions regarding site development and storm water management, the Church demonstrated its willingness to cooperate by taking several steps to come into compliance with the Code. On September 21, 2001, the date of the hearing scheduled by the May 10, 2001, order, the trial court entered an agreed order which stated "defendant has complied with appropriate plans and specifications for the improvements/corrections required by the Village, and *** permits for the work are to issue." The order directed the Church to file the requisite building permit applications and pay the applicable fees and stated that "[u]pon approval by the Village authorities Defendant shall without undue delay cause the required code compliance work to be undertaken." The order scheduled a final report date of November 30, 2001, and noted that on that date the court would review defendant's "compliance endeavors" and "further entertain [plaintiff's] motion for the imposition of fines." The order did not establish a date by which the work had to be completed; in fact, it reflects that the Church could not undertake the compliance work

until it had received "approval by the Village authorities." Furthermore, while the order scheduled November 30, 2001, as a "final" report date, it did not state that the purpose of that date was to review whether all the work had been completed. Rather, it stated that the purpose was to review the Church's "compliance endeavors."

On November 28, 2001, two days before the report date, the Village's civil engineer completed a field report that noted several steps taken by the Church to come into compliance, including the grading of ponds, the pouring of overflow weirs, and the installation of outlet culverts. In addition, the report noted that the time of year prevented the Church from establishing vegetation until spring and that accordingly it "should provide temporary measures such as erosion control blanket to ensure the grading is not disturbed through the winter and to protect downstream properties from eroding soils."

At the hearing conducted two days later on the November 30, 2001, report date, the trial court did not entertain the Village's motion for the imposition of fines, but instead entered an agreed order continuing the matter until April 26, 2002, "for Defendant's report as to the status of the correction of violations and a pre-trial conference regarding the imposition of fines." On April 26, 2002, the trial court did not conduct a pretrial conference related to fines. Instead, the court entered an order continuing the matter until June 18, 2002. On that date, the Church introduced a letter dated June 17, 2002, which noted that it had responded to certain matters included on the punchlist prepared by the Village's engineer on June 14, 2002. In addition, the letter noted that the "As-Built drawings" referred to on the punchlist would be completed within two days. The parties' briefs on appeal indicate that the Church was in complete compliance as of July 10, 2002.

The above orders reflect that after entry of the initial May 10, 2001, agreed order, the Church began taking steps to come into compliance with the Code and came into full compliance within approximately 14 months. While the May 10, 2001, order does state that "[a]ll work shall be completed within twenty-eight (28) days after being commenced," the subsequent orders do not establish fixed deadlines. Rather, those orders reflect that the Church's ability to "commence" work and to come into full compliance with the Code was limited by weather conditions, receipt of approval from the Village authorities, and "the substantial catchment of vegetation." The first order reflecting steps taken by plaintiff in response to the May 10, 2001, order was entered on September 21, 2001. As earlier noted, the September 21, 2001, order specifies that "defendant has complied with appropriate plans and specifications for the improvements/

corrections required by the Village, and permits for the work are to issue." Thus, the record reflects that as of September 21, 2001, plaintiff had taken affirmative steps to cooperate and come into compliance with the May 10, 2001, order.

Imposition of a fine constitutes an abuse of discretion "[w]here cooperation is shown, compliance has come about, and imposition of a fine would not aid enforcement." *Village of Glenview*, 282 Ill. App. 3d at 372. During the time period beginning on and following September 21, 2001, cooperation was shown by the Church, compliance was demonstrated as, for example, reflected in the September 21, 2001, order, and imposition of a fine would not have aided enforcement. For the reasons previously discussed, including the affirmative steps taken by the Church to come into compliance, we find that the trial court's imposition of fines during the period beginning on and following the September 21, 2001, order constituted an abuse of discretion.

The trial court imposed a $100,000 fine (approximately $100 per day), covering the period from September 1999 through July 2002, which included $100 fines for each of the 292 days which transpired from September 21, 2001, until July 10, 2002. Accordingly, based upon the foregoing discussion, we affirm the trial court's decision to impose fines for the time period prior to September 21, 2001, but reduce the total fine of $100,000 by $29,200 for the time period from September 21, 2001, until July 10, 2002. We direct the clerk of the circuit court to modify the trial court's August 22, 2002, order to reflect imposition of a total fine in the amount of $70,800.

Affirmed as modified.

McNULTY and TULLY, JJ., concur.